IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD L. VERBANAC JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 20-1506 |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. | |

ORDER

AND NOW, this 9th day of February 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 16) filed in the above-captioned matter on July 13, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on June 14, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED in part and DENIED in part[2] and the matter is remanded to the Commissioner of Social Security ("Commissioner") for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    Background**

---

[1]     Kilolo Kijakazi is substituted as Defendant in this matter, replacing former Commissioner Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). This change has no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect this change.

[2]     In his summary judgment motion, Plaintiff has requested remand with costs. (Doc. No. 14, pg. 1) ("Plaintiff respectfully requests that this Honorable Court enter Summary Judgment in favor of the Plaintiff and against the Defendant together with costs being fixed against the Defendant."). But because Plaintiff has not offered any argument on the issue of costs in his accompanying brief, the Court will deny Plaintiff's motion as to costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996). Plaintiff may pursue costs pursuant to the Equal Access to Justice Act ("EAJA") after final judgment is entered in this matter.

In January 2018, Plaintiff applied for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"). (R. 128). He alleged disability onset as of November 29, 2017. (R. 13). In pursuit of his application, Plaintiff appeared for a hearing before an Administrative Law Judge ("ALJ") on April 24, 2019. (R. 13, 31). Before the ALJ, Plaintiff opted to pursue his case without the assistance of counsel. (R. 36). Approximately seven weeks later, the ALJ denied Plaintiff's DIB application. (R. 21). Plaintiff subsequently sought review before the Appeals Council, this time with the assistance of an attorney. (R. 124—26). The Appeals Council denied Plaintiff's request for review. (R. 1). Accordingly, the ALJ's decision became the final agency decision in the matter, 20 C.F.R. § 404.981, which Plaintiff now challenges before this honorable Court. The parties' arguments are presented in their cross-motions for summary judgment.

**II.     Standard of Review**

The Court's review of the ALJ's decision is plenary as to legal questions, and the Court reviews the ALJ's findings of fact to ensure they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The standard is deferential, demanding only such evidence as "a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

ALJs use a five-step sequential evaluation process to assess disability. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant will be found not disabled, ending the inquiry. *Id.* At step two, the ALJ identifies the claimant's severe medically determinable

impairments ("SMDI")—the claimant must have at least one. *Id.* § 404.1520(a)(4)(ii) (explaining that severity can be gauged by multiple impairments' combined effect). At step three, the ALJ determines whether the claimant's impairment/combination of impairments "meets or equals one of [the] listings in appendix 1" of Subpart P of the applicable regulations. *Id.* § 404.1520(a)(4)(iii). A finding in the claimant's favor at this step ends the inquiry in the claimant's favor. *Id.* If there is no match, the ALJ must decide whether the claimant can return to past work or adjust to other work. *Id.* § 404.1520(a)(4)(iv)—(v). But first, the ALJ must make a finding as to the claimant's "residual functional capacity" ("RFC"). *Id.* RFC represents a claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). If a claimant's RFC does not permit a return to past relevant work and, further, his/her RFC and other vocational factors do not permit adjustment to other appropriate and available work, *then* the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iv)—(v).

**III.   The ALJ's Decision**

In this matter, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 15). Next, he identified nine SMDIs: (1) obesity, (2) right hip degenerative joint disease, (3) lumbar degenerative disc disease, (4) hypothyroidism, (5) cirrhosis, (6) obstructive sleep apnea, (7) congenital bilateral club feet, (8) pulmonary hypertension, and (9) acute respiratory failure. (R. 15—16). The ALJ determined that none of these impairments met or equaled the criteria for any presumptively disabling impairment listed in the regulations (R. 16) and, therefore, moved on to assess Plaintiff's RFC.

To that end, the ALJ considered Plaintiff's allegations of back pain, neck pain, hip pain, and respiratory problems (R. 17); Plaintiff's daily activities, *e.g.*, driving, managing personal

3

care, and relying on his mother for housework but preparing simple meals (R. 17); objective medical evidence, *e.g.*, a consultative examination, outpatient treatment records for hypothyroidism and hypertension, hospitalization records related to respiratory failure, and a radiology report (R. 18); as well as medical opinion evidence that consisted of the consultative examiner's ("CE") February 2018 evaluation and a medical consultant's disability determination. (R. 19).

Based on the evidence, the ALJ found Plaintiff's RFC included the capacity for sedentary work with limitation to:

- Lifting and/or carrying ten (10) pounds occasionally,
- Lifting and/or carrying less than ten (10) pounds frequently,
- Standing and/or walking up to two (2) hours,
- Sitting up to six (6) hours,
- Only occasionally climbing ramps and stairs, but not ladders, ropes, or scaffolds,
- Only frequently balancing and stooping,
- Only occasionally crouching,
- And never kneeling or crawling.

(R. 17). The ALJ further prohibited:

- Concentrated exposure to extreme cold; extreme heat; excessive humidity; excessive vibration; pulmonary irritants such as fumes, odors, dusts, chemicals, and gases; or open flames,
- Concentrated exposure to workplace hazards including unprotected machinery and unprotected heights.

(R. 17). Using that RFC finding, the ALJ worked with a vocational expert ("VE") to find that Plaintiff could not return to his past work. (R. 19). But further found that Plaintiff's RFC, age, education, and work experience would permit adjustment to several occupations (charge account clerk, order clerk, and document preparer) that, all told, offered approximately 132,000 jobs in the national economy. (R. 20). Thus, the ALJ found Plaintiff not disabled. (R. 21).

**IV.   Legal Analysis**

Plaintiff raises several arguments for remand. First, he argues the ALJ failed to secure a valid waiver from Plaintiff of his right to be represented at the hearing. Second, Plaintiff argues the ALJ neglected his duty to develop the record. Third, Plaintiff argues the ALJ's findings for the RFC are not supported by substantial evidence. And, finally, Plaintiff argues that the ALJ ignored the VE's testimony about the impact of off-task time and absenteeism on employability. As the Court explains herein, Plaintiff's strongest argument is that the record in this matter was insufficiently developed. Because the Court agrees that the record was underdeveloped before the ALJ, it will order remand.[3]

---

[3]  Briefly, the Court here rejects Plaintiff's argument that his waiver of representation before the ALJ was inadequate. Claimants for social security benefits have "a statutory and regulatory right to counsel" at hearings. *Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 Fed. Appx. 189, 190 (3d Cir. 2003) (citing *Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985); 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700–404.1707). However, it is claimants' prerogative to pursue their applications *pro se* so long as they make "knowing and intelligent" waivers of their right to be represented. *Id.* A claimant's waiver of this right must be preceded by "notice of the right to counsel." *Vivaritas v. Comm'r of Soc. Sec.*, 264 Fed. Appx. 155, 157 (3d Cir. 2008).

Plaintiff points to the notice standard articulated by the United States Court of Appeals for the Seventh Circuit and argues that the ALJ failed to meet that standard when noticing Plaintiff of his right to representation in this matter. The Seventh Circuit has held that effective waiver of counsel requires notice that covers (1) how an attorney can help, (2) the possibility of retaining *pro bono* counsel or contingency-fee services, and (3) limitation of attorneys' fees in social security matters to 25% of past-due benefits, as well as the necessity of court approval for fees. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

The United States Court of Appeals for the Third Circuit has *not* adopted the Seventh Circuit's criteria. *Vivaritas*, 264 Fed. Appx. at 157 n.1 (citing *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Binion*, 13 F.3d at 245). Nonetheless, Plaintiff argues his waiver was not knowing and intelligent because: he was not made aware of how an attorney could help him, the ALJ's explanation of seeking review before the Appeals Council was confusing, the threat of several months' delay pressured him to proceed unrepresented, the ALJ encouraged waiver by assuring Plaintiff he would obtain any necessary medical records, and Plaintiff did not "thoroughly understand" the ALJ's explanation of, among other things, his right to representation. (Doc. No. 15, pgs. 8, 10, 12).

The transcript of proceedings before the ALJ roundly contradicts Plaintiff's arguments that Plaintiff's decision to waive his right to representation was uninformed. At the top of the

While it is clear to the Court that Plaintiff waived his right to counsel at the hearing before the ALJ, the Court finds compelling Plaintiff's argument that the ALJ's development of the record was inadequate. In social security proceedings, ALJs are duty bound "to develop a full and fair record." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981)). "Accordingly, an ALJ must secure relevant information" to make the necessary findings to decide a claimant's application for benefits under the Act. *Id.* (citing *Hess v. Sec'y of Health,*

---

hearing, the ALJ explained Plaintiff had "the right to be represented by an attorney or a non-attorney." (R. 33). He then explained such a person might help Plaintiff's case by, *inter alia*, obtaining and filing medical records and presenting such evidence to the benefit of his case. (R. 33). The ALJ suggested Plaintiff might be able to find need-based *pro bono* legal services (R. 34) and further assured Plaintiff that a hired representative would need approval to "charge or receive a fee." (R. 33—34). He added that fees were capped at 25% of past-due benefits or $6,000, whichever turned out to be less, though representatives could charge for expenses like "obtaining and copying medical records." (R. 33—34). Having explained all this, the ALJ told Plaintiff that he could also proceed without a representative. (R. 34). The ALJ further approximated that the next available hearing would be in August, *i.e.*, postponing the hearing to retain counsel would result in about a four-month delay. (R. 34—36). Plaintiff asked whether he could have another hearing if he went ahead without counsel, and the ALJ explained that any appeal of an adverse decision would go to the Appeals Council and that their review would be limited to assessing whether the ALJ had made a mistake. (R. 35).

Presented with this information, and having his questions answered, Plaintiff responded: "I'll go ahead for right now." (R. 36). He confirmed that decision in writing. (R. 123). Thus, despite Plaintiff's arguments, it is clear to the Court that Plaintiff—presented with all the necessary information to make his decision—opted to proceed without the assistance of a representative. There is no indication in the record that Plaintiff suffered any mental deficit that would have interfered with his understanding of the information presented to him. Before the Court Plaintiff seems to suggest that his obtaining a GED reflects negatively on his ability to understand the ALJ's explanation of his rights, but there is absolutely no support for such a suggestion. Further, to the extent Plaintiff chose to go ahead without representation to avoid further delay, such a consideration is one any applicant might weigh against the advantages of delaying a hearing to secure counsel before opting to move forward *pro se*. The frustration of delay is an understandable consideration in making the choice to forgo the advantages of representation—that a claimant wishes to avoid delay by forfeiting such advantage does not make his decision any less knowing or intelligent. Plaintiff made an informed choice, and the ALJ respected it. There is no fault in that.

*Ed. & Welfare*, 497 F.2d 837, 841 (3d Cir. 1974)). This duty relates to the Act's "beneficent purposes." *Hess v. Sec'y of Health*, 497 F.2d at 840—41 (explaining that the purposes of the Act may require that an ALJ seek additional evidence, suggest to the claimant that additional evidence be submitted at a later time, or secure further medical evaluations). *See Sterrett v. Berryhill*, No. CV 17-63-E, 2018 WL 1400383, at *1 n.2 (W.D. Pa. Mar. 20, 2018) (explaining that the duty to develop the record usually arises when, as-is, the record does not provide enough information to reach a decision). An ALJ's duty in this regard is at its height when claimants are unrepresented. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) ("An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record.").

In this case, Plaintiff's medical history is largely divisible into records that predate his December 2018 hospitalization and records pertaining to and postdating that event. The medical problems documented in the pre-hospitalization records are those that gave rise to Plaintiff's January 2018 application for benefits under the Act. For 2017 and most of 2018, Plaintiff's primary complaints were "chronic pain in both feet, knees, and right hip, and back" that made it difficult to "function daily," *i.e.*, walk, bend, and sit. (R. 148). This chronic pain was observed by the CE, Dr. Smith-Demain, who evaluated Plaintiff in February 2018. (R. 228). At the time of her evaluation, the CE noted that Plaintiff's chief complaint(s) were osteoarthritis with chronic foot pain, pain in the right hip and low back, and knee pain. (*Id.*). This pain arose, in part, from Plaintiff's childhood condition of clubbed feet. (*Id.*). The CE also noted Plaintiff's history of hypothyroidism and prediabetes. (*Id.*). But Plaintiff denied a "history of hypertension, heart attack, heart disease, asthma, emphysema, or seizures." (R. 229).

Pursuant to her evaluation, the CE recorded diagnoses of clubbed feet (post-surgical repair with continuing chronic bilateral pain), chronic right hip pain, chronic low back pain,

chronic bilateral knee pain, hypothyroidism, and prediabetes. (R. 231). The CE opined that, despite his impairments, Plaintiff could lift up to ten pounds continuously/twenty pounds frequently, sit up to eight hours daily, and stand and/or walk up to four hours daily, but could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl, nor tolerate exposure to humidity and wetness or extreme cold. (R. 233—38).

The ALJ considered the CE's opinion toward his RFC finding and, further, considered March 2018 findings of the disability determination services medical consultant (hereinafter "consultant"). (R. 19). In the consultant's consideration of Plaintiff's case, he noted that Plaintiff had complained of foot pain, hip pain, back pain, knee pain, arthritis, and a thyroid condition. (R. 71—72). Considering the available evidence, the consultant opined that, due to his impairments, Plaintiff would be limited to occasionally lifting or carrying twenty pounds and frequently lifting or carrying ten pounds. (R. 76). He further opined Plaintiff could stand and/or walk for six hours in an eight-hour workday. (*Id.*). He went on to articulate postural limitations (*e.g.*, climbing ramps and stairs only frequently) and environmental limitations (*e.g.*, avoid concentrated exposure to extreme cold). (R. 76—77). Combining those limitations, the consultant prescribed "light" work and returned a "Not Disabled" determination. (R. 79).

The evidence discussed above gave the ALJ significant information about Plaintiff's impairments and resultant limitations as Plaintiff was experiencing them when he applied for benefits. However, long after filing that application, Plaintiff experienced a significant medical event. On December 18, 2018, Plaintiff sought treatment because he was experiencing dizziness, fatigue, and bloating. (R. 841). He had also gained twenty-five-pounds in little over a month. (*Id.*). Plaintiff was assessed and, later, "life flighted" and hospitalized for ten days. (R. 50). The hospitalization revealed a heart problem and pneumonia in Plaintiff's lungs. (*Id.*).

The medical records arising from the hospitalization are voluminous, taking up several hundred pages of an 873-page record. They show Plaintiff suffered acute respiratory failure and that, even once he was stabilized and discharged, there was concern about Plaintiff's health due to his sleep apnea and pulmonary hypertension. (R. 250, 256). After his discharge, Plaintiff continued to carry an oxygen tank to use as needed and at night. (R. 55). Before the ALJ, Plaintiff testified that while he had improved since discharge, he sometimes struggled to breathe and was very concerned about his heart. (R. 56). The ALJ acknowledged that this "evidence of hypoxic respiratory failure with evidence of heart failure" was recent (R. 56), in light of Plaintiff's explanation that prior to these new difficulties his application pertained to his "legs," "hips," and "back." (R. 55).

Based on this evidence, the ALJ included among Plaintiff's SMDIs those impairments that closely related to or were discovered during Plaintiff's hospitalization, including obstructive sleep apnea, pulmonary hypertension, and acute respiratory failure. (R. 15—16). However, the ALJ's discussion of evidence that would show what limitations arose from these impairments and persisted after his hospitalization is very brief in the decision, likely because there was little evidence in this regard. The ALJ considered Plaintiff's testimony (R. 17), the hospitalization records themselves (R. 18), records from his follow-up appointments in January 2019 (*id.*), and the March 2019 radiology report (*id.*). This evidence seems to show Plaintiff's general condition after discharge but does little to help determine how Plaintiff's newer impairments practically limited him.

It seems such evidence was or could have been made available had the ALJ sought it. For instance, Plaintiff had a cardiologist who might have opined on his impairments and limitations. (R. 40—41). At the time of the hearing, Plaintiff testified that he would need to

have more tests run (*id.*), and the cardiologist might have explained what conditions and/or symptoms necessitated ongoing testing and treatment.  Plaintiff also testified that he participated in rehabilitation therapy for his lungs Monday, Wednesday, and Friday.  (R. 56, 59).  Records of Plaintiff's rehabilitation would likely have helped the ALJ assess appropriate limitations. Instead of seeking out such evidence, the ALJ used the limited evidence he had to find Plaintiff had improved enough that his symptoms and limitations could not be as severe as he claimed.  (R. 18).

The Court finds this constituted insufficient development of the record.  More evidence was needed in this matter to determine the extent of Plaintiff's limitations.  Claimants are entitled to determinations of disability based on full records.  *Ventura*, 55 F.3d at 902.  The Court is concerned Plaintiff did not receive that here where, among other things, the record lacked any current medical opinion evidence or prior findings that accounted for impairments arising from Plaintiff's December 2018 hospitalization.[4]  On this basis, the Court will remand the matter to the Commissioner.  Because this record-development issue alone warrants remand, the Court herein only briefly addresses Plaintiff's other arguments.

Plaintiff has argued that substantial evidence does not support the ALJ's RFC determination, taking particular issue with the ALJ's purported adoption of the CE's postural and environmental limitations.  To the extent discussion of the CE's opined postural/environmental

---

[4] Insofar as the Commissioner argues that any evidence the ALJ failed to obtain is evidence Plaintiff could have presented to the Appeals Council, the Court finds that argument unavailing.  Claimants may only present new and material evidence to the Appeals Council.  20 C.F.R. § 404.970(a)(5).  The relevant records to the Court's discussion herein would, at least in part, have existed at the time of the hearing, *e.g.*, additional cardiologist records or rehabilitation records.

limitations continues to be necessary on remand, it would be helpful if the ALJ clarified how the CE's opinions informed the corresponding aspects of the RFC.[5]

Plaintiff has also challenged the ALJ's consideration of his subjective complaints toward the RFC, arguing the ALJ lacked a rational basis for discounting those complaints when they were supported by medical evidence in the record. (Doc. No. 15, pg. 17). The Court has rejected this argument—that ALJs may not reject subjective complaints without a rational basis for doing so—several times over and need not explain its rejection again. *See Trudgen v. Saul*, No. CV 20-735, 2021 WL 3883977, at *1 n.2 (W.D. Pa. Aug. 31, 2021); *Mastrocesare v. Saul*, No. CV 20-347, 2021 WL 2434587, at *1 n.2 (W.D. Pa. June 15, 2021).

Plaintiff's final argument that the ALJ failed to appropriately consider the VE's testimony is also an argument that is frequently presented to the Court unsuccessfully. As the Court has explained, arguments that attack ALJs' consideration of VE testimony often are mere restatements of RFC challenges. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005). Unless there was evidence in the record that "credibly established" specific off-task time and absences limitations, Plaintiff has no basis for arguing it was error for the ALJ to disregard

---

[5] The CE opined that Plaintiff would "never" be able to climb ladders or scaffolds, stoop, kneel, crouch, or crawl. (R. 236). For environmental limitations, she opined Plaintiff could "[n]ever" "tolerate exposure to" "[h]umidity and wetness" or "[e]xtreme cold." (R. 237). Considering those opinions, the ALJ accurately recounted that the CE opined Plaintiff could "never tolerate exposure to humidity, wetness, and extreme cold." (R. 19). But he went on to indicate that "the record also supports additional environmental limitations, as detailed above." (R. 19). It is unclear whether the ALJ was referring to the CE's opined limitations or the environmental limitations he had already included in the RFC, which were: "no *concentrated* exposure to extreme cold" or "*excessive* humidity." (R. 17) (emphasis added). Because one interpretation of the ALJ's comment on the CE's opinions is that he intended to impose more restrictive environmental limitations than she had opined, it is confusing that the ALJ then appeared to not go so far as the CE did. For example, it would appear that the ALJ, unlike the CE, would allow Plaintiff to be exposed to humidity so long as it was not excessive. If appropriate, it would be helpful for the ALJ to clarify his consideration of the CE's opinions on remand.

the VE's testimony on off-task time and absences in the decision. *Id.* at 554 (explaining that the "ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*").

### V.     Conclusion

Based on the foregoing, the Court has determined that remand is appropriate for further consideration of Plaintiff's application for benefits with an appropriately expanded record. Accordingly, the Court remands this matter to the Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch  
United States District Judge

ecf:    Counsel of Record